**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0600-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

GABRIEL MERCADO,

     Defendant-Appellant.

_____

Submitted February 28, 2024 – Decided April 1, 2024

Before Judges Currier, Susswein and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 19-01-0101.

Jennifer Nicole Seletti, Public Defender, attorney for appellant (Stephen William Kirsch, Designated Counsel, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (Deepa S. Y. Jacobs, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Gabriel Mercado appeals his jury trial convictions for attempted murder, aggravated assaults, unlawful possession of a weapon, possession of a weapon for an unlawful purpose, hindering, and stalking. The jury found defendant guilty after a lengthy trial at which he asserted an insanity defense. Defendant contends the trial court gave contradictory jury instructions and committed plain error in handling issues involving jurors. Defendant also contends his sentence is excessive. After carefully considering defendant's contentions in light of the record and governing legal principles, we affirm his convictions. With respect to the decision to impose consecutive sentences, the State concedes the trial court did not explain the overall fairness of the sentence as required in State v. Torres, 246 N.J. 246, 270 (2021). Accordingly, we remand for the trial judge make a finding concerning the overall fairness of the sentence.

I.

Because defendant relied on an insanity defense, there were no significant disputes at trial concerning the criminal acts he committed. We therefore need only briefly summarize the pertinent facts adduced at trial.

Defendant knew the victim through work, followed her on social media, and developed a romantic obsession with her. She rejected his advances. He sent

her a message on social media expressing thoughts of self-harm and insecurities linked to a troubled home life and an incident concerning his hair. At this point, the victim blocked defendant on her social media accounts. Defendant found other methods to surveil the victim's movements, both in person and online. In the early hours of October 15, 2018, defendant attacked the victim outside her family home, stabbing her with a knife approximately ten times. Defendant fled when the victim's father came out of the house. The victim suffered fractures on both sides of her cervical spine, fractures to her right vertebral artery, and severe lacerations on her face, tongue, hands, and wrist.

A significant amount of testimony was presented concerning defendant's mental state at the time of the attack. Expert Dr. Eleanor Vo, a forensic psychiatrist, testified for the defense. Vo opined that, on the date of the incident, defendant was exhibiting "major depressive disorder with psychotic features." She noted the victim characterized defendant's messages as "insane." Vo also testified about defendant's "history" of becoming "obsessed with following on social media and trying to continually stalk" people who have rejected him.

The State's expert, Dr. Steven Simring, a psychiatrist, agreed defendant had depression. However, he rejected Vo's conclusion that defendant's thoughts were disordered, pointing to defendant's actions after the attack. Despite

A-0600-21

defendant's compromised mental state, Simring opined defendant "has always been grounded in reality" and was aware of his conduct and its consequences during the commission of the crime. Defendant told Simring he started stalking the victim around September or October 2018.

II.

On January 10, 2019, defendant was charged by indictment with first-degree attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3 (count one); second-degree aggravated assault, N.J.S.A. 2C:12-l(b)(l) (count two); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count three); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count four); third-degree aggravated assault, N.J.S.A. 2C:12-l(b)(2) (count five); third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1) (count six); and fourth-degree stalking, N.J.S.A. 2C:12-10(b) (count seven).

After a jury trial from June through August 2021, defendant was convicted of all counts. He was sentenced on October 1, 2021.[1] The trial court merged counts two, three, four, and five into count one and sentenced defendant on the attempted-murder conviction to a twenty-year prison term subject to the No

---

[1] On October 19, 2021, the trial court issued an amended judgment of conviction.

A-0600-21

Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The court sentenced defendant on the hindering conviction to a five-year prison term with a two-and-a-half-year period of parole ineligibility, and on the stalking conviction to an eighteen-month prison term. The sentences for hindering and stalking were ordered to be served consecutively to the sentence imposed on the attempted murder conviction.

This appeal follows. Defendant raises the following contentions for our consideration:

<u>POINT I</u>

OVER DEFENSE OBJECTION, THE JURY INSTRUCTIONS TOLD THE JURY TWO COMPLETELY CONTRADICTORY THINGS: (1) OVER AND OVER, THAT THE JURY SHOULD CONVICT DEFENDANT IF THE STATE SIMPLY PROVED ALL THE ELEMENTS OF A GIVEN CRIME AGAINST HIM, WITH NO REFERENCE TO THE NEED TO CONSIDER THE INSANITY DEFENSE, AND (2) TWICE, THAT IF THE JURY BELIEVED THE STATE HAD PROVED ALL THE ELEMENTS OF A CRIME, THE JURY SHOULD THEN CONSIDER THE DEFENSE OF INSANITY FOR THAT CRIME. WITH NO WAY TO DETERMINE WHICH OF THOSE INSTRUCTIONS WAS FOLLOWED, THE DEFENDANT'S CONVICTIONS SHOULD BE REVERSED AND THE MATTER REMANDED FOR RETRIAL.

<u>POINT II</u>

5

THE JUDGE'S RESPONSE TO A JUROR WHO ASKED ON THE DAY THAT DELIBERATIONS BEGAN WHETHER HE COULD BE EXCUSED FROM JURY SERVICE IN ORDER TO CATCH A PLANE THE NEXT DAY WAS UNDULY COERCIVE OF A VERDICT. (NOT RAISED BELOW).

POINT III

THE DEFENDANT'S RIGHTS TO DUE PROCESS AND AN IMPARTIAL JURY WERE VIOLATED WHEN AN EMPLOYEE OF THE PROSECUTOR'S OFFICE OVERHEARD ONE JUROR SAY TO TWO OTHERS, ABOUT DEFENDANT, "HE HAS BIGGER PROBLEMS THAN HIS HAIR," AND THE JUDGE REFUSED TO VOIR DIRE THE JURORS IN QUESTION WITH ANY SPECIFIC[I]TY ABOUT THE REMARK—CHOOSING INSTEAD MERELY TO ASK THEM IF THEY HAD DISCUSSED ANY "TESTIMONY." (RAISED BY PROSECUTOR BELOW; NOT RAISED BY DEFENSE COUNSEL BELOW).

POINT IV

THE CONVICTION FOR FOURTH-DEGREE STALKING SHOULD BE REVERSED BECAUSE THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUPPORT THE CHARGE.

POINT V

THE SENTENCE IMPOSED IS MANIFESTLY EXCESSIVE.

6

A-0600-21

III.

We first address defendant's contention the jury charge was contradictory, making it impossible to determine whether the jury considered the defense of insanity. Defendant does not challenge the substance of the judge's insanity defense instructions. Rather, he challenges the <u>sequencing</u> of the jury instructions in which the court explained the elements of each offense before addressing the elements of the insanity affirmative defense. Defendant contends "the jury was told over and over to convict defendant if the State merely proved all the elements of the crime beyond a reasonable doubt, with no mention at that point of the need to deliberate on insanity before rendering a verdict."

We are unpersuaded by defendant's sequencing argument. Nothing precludes a trial judge from instructing the jury on the alleged offenses before instructing it on a defendant's proffered affirmative defense. Reading the charge as a whole—as we must, <u>Berberian v. Lynn</u>, 355 N.J. Super. 210, 219 (App. Div. 2002)—we are satisfied the jury instructions relating to the insanity defense augmented the instructions on the substantive offenses that were given first, and did not, as defendant claims, contradict them.

We begin our analysis by acknowledging the governing legal principles. "'An essential ingredient of a fair trial is that a jury receive adequate and

A-0600-21

understandable instructions.'"  State v. McKinney, 223 N.J. 475, 495 (2015) (quoting State v. Afanador, 151 N.J. 41, 54 (1997)).  Contradictory jury charges generally constitute reversible error, because when a jury is given contradictory instructions, the court cannot determine which of the competing instructions the jury applied.  See State v. Oglesby, 122 N.J. 522, 530 (1991) (citing State v. Moore, 122 N.J. 420, 433 (1991)).  Importantly, for purposes of this appeal, when determining whether a charge is ambiguous or misleading, the reviewing court should read the charge in its entirety.  See State v. R.B., 183 N.J. 308, 324 (2005) (quoting State v. Hipplewith, 33 N.J. 300, 317 (1960)).  As our Supreme Court emphasized in State v. Jordan, "all that is necessary is that the charge as a whole be accurate."  147 N.J. 409, 422 (1997) (emphasis added) (citing Largey v. Rothman, 110 N.J. 204, 206 (1988)).

We note that early in the jury charge the trial court addressed the concept of diminished capacity.[2]  The trial court explained the jury must consider

---

[2]  "[D]iminished capacity refers to evidence that can negate the presence of an essential mental element of the crime. . . ."  State v. Delibero, 149 N.J. 90, 98 (1997) (citing State v. Breakiron, 108 N.J. 591, 600-01 (1987)).  "A jury considers evidence of diminished capacity in relation to the State's burden to prove the essential elements of the crime."  Ibid. (citing State v. Harris, 141 N.J. 525, 555 (1995)).  "Insanity, by contrast, is an affirmative defense that a defendant must prove by a preponderance of the evidence."  Id. at 99 (citing Harris, 141 N.J. at 552).

"[e]vidence alleging that the defendant suffered from a mental disease or defect." The court continued:

> In considering the State's burden of proof, which is to prove every element of the charged offense beyond a reasonable doubt, you must consider and weigh all of the evidence of defendant's mental state, including that offered as evidence of mental disease or defect, in determining whether or not the State has proven beyond a reasonable doubt that [defendant] acted with the requisite state of mind forming any element of the offenses charged in the indictment.
>
> In making this decision, you must give the defendant the benefit of any reasonable doubt about whether his mental function was such as to render him incapable of acting with the required state of mind or about whether he did, in fact, act with the required state of mind.
>
> In other words, you must determine whether, despite the evidence of mental disease or defect, the State has proven beyond a reasonable doubt that the defendant acted with the requisite state of mind forming any element of the offenses charged in the indictment.

After discussing diminished capacity, the court addressed each crime charged in the indictment, along with their relevant lesser-included offenses. At the end of the instruction on each offense, the court repeated an instruction identical to or to the same effect as the following:

> If you find that the State has proven each element beyond a reasonable doubt, then you must find defendant guilty. If you find that the State has failed to prove any element beyond a reasonable doubt, then you

must find defendant not guilty of the charge of aggravated assault by causing or attempting to cause bodily injury with a deadly weapon.

The gravamen of defendant's contention on appeal is the trial court repeatedly instructed the jurors that they "must find defendant guilty" without regard to the insanity defense. But that argument isolates portions of the final jury instructions. After instructing the jury on the elements of each applicable offense, the trial court proceeded to instruct on the insanity defense, explaining in pertinent part:[3]

> If you find that the State has proved all the elements of the crime and the defendant's participation therein beyond a reasonable doubt, and if you also find that the defendant has established the defense of insanity by a preponderance of the credible evidence, your verdict must be not guilty by reason of insanity, and you shall so report and declare your verdict.
>
> . . . .
>
> Again, you may return one of three verdicts: [n]ot guilty, guilty, or not guilty by reason of insanity.

---

[3] As noted, defendant does not challenge the substance of the trial court's instructions regarding the insanity defense, which followed the Model Jury Charge. We therefore need not reproduce the entirety of the insanity-defense instructions that were given to the jury.

A-0600-21

We presume the jury listened to and followed <u>all</u> instructions before reaching a verdict on any of the charged offenses. <u>State v. Loftin</u>, 146 N.J. 295, 390 (1996); <u>State v. Manley</u>, 54 N.J. 259, 271 (1969). Indeed, at the risk of stating the obvious, there was no opportunity for the jury to deliberate before the court completed its final instructions.[4] It follows the jury was at no time deliberating without having been fully instructed on the insanity defense.

In sum, we reject defendant's contention the jury instructions were "contradictory" making it unclear which "set" of directions the jury was to follow. There was only one set of instructions, covering the gamut of relevant issues pertaining to the substantive offenses and the insanity defense.

---

[4] We add the jury was instructed not to deliberate or render any decision until it had received its final instructions. The judge instructed the jury:

> Following summations you will receive your final instructions on the law from me and you will then retire to consider your verdict.
>
> You are not to form or express an opinion on this case, but are to keep an open mind until you've heard all of the testimony, have heard summations, have had the benefit of my instructions as to the applicable law, and have been instructed to begin your deliberations.

## IV.

We next address defendant's contention—raised for the first time on appeal—the trial court impermissibly pressured a juror into delivering a verdict. At the charge conference, the court and counsel were advised juror number four asked court staff whether the trial would conclude in time for him to make a scheduled flight for a vacation. During voir dire, the juror brought his scheduled vacation to the court's attention, at which time the court informed him he would not be excused. Both parties agreed at the charge conference the court should address the juror's timing question to guard against the possibility he might simply leave for vacation. The court brought the juror into the courtroom and informed him: "you're not going to be excused. If deliberations are done by— before the time your flight leaves, then you're fine. If they're not done, you're going to have to cancel that flight, you're going to miss it."

Juror number four was the only juror in the courtroom. No such instruction was included in the final jury charge. Defense counsel did not object to the way the trial court handled the situation.

The jury deliberated for approximately two and a half hours that day. Late in the day, it sent a note to the court asking to review medical records and testimony transcripts. The court informed the jury no transcripts were available.

A-0600-21

Instead, they would have to re-listen to the testimony. The court instructed the jury to renew their request in the morning if they wanted to hear the playback testimony. The next day, the jury deliberated for approximately three and a half hours before delivering its verdict. It did not renew its request for playback testimony.

The law is well-settled a trial court should not put undue pressure on a jury to return a verdict. State v. Figueroa, 190 N.J. 219, 238-43 (2007); State v. Czachor, 82 N.J. 392, 397-403 (1980) (discontinuing the use of "Allen[5] charge[s]," finding them "inherently coercive" because they "usually admonish[] specifically and pointedly only those [jurors] in the minority to reconsider their beliefs in light of the adverse position held by the majority"). Defendant's reliance on Figueroa, however, is misplaced, as the circumstances in that case are starkly different from the present circumstances.

In Figueroa, "shortly before 2:25 p.m., the jury sent the court a note advising that 'we cannot unanimously agree on the verdict.'" Id. at 226. In response, the court gave a supplemental instruction that included the following admonition: "I got to be here tomorrow, I got to be here Friday. I got nothing

---

[5] As set forth in Allen v. United States, 164 U.S. 492 (1896), an Allen charge is a supplement charge given to a deadlocked jury to encourage a final verdict.

going on Saturday, and Giants are playing away on Sunday, so we will be here as long as it takes you to go through this process." Id. at 227.  Defense counsel immediately objected to the instruction.  Ibid.

The Supreme Court concluded the supplemental charge was unduly coercive for failing to "remind[] the jurors 'not [to] surrender your honest conviction as to the weight or effect on the evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.'" Id. at 240 (second alteration in original) (quoting Model Jury Charges (Criminal), "Further Jury Deliberations" (1994)).  The Court also held "[t]he reference to the possibility that deliberations might continue through the remainder of the week and into the weekend had the capacity to coerce the jury into reaching a verdict that it might not otherwise have reached."  Id. at 242. The Court concluded that, "in light of the language the [trial] court chose and the context in which the comments were made, it is likely that the jury did not understand the comment about weekend deliberations in the manner in which the court intended" and as a consequence the trial court "impermissibly coerced the dissenting juror or jurors into reaching a verdict with which he or she did not honestly agree." Id. at 242-43.

In the matter before us, there was no supplemental instruction given to all jurors. The colloquy, which occurred before the jury was charged and began its deliberations, was with a single juror about a matter of trial administration. Moreover, defense counsel did not object to the colloquy. We are satisfied the manner in which the court addressed juror number four does not constitute error, much less plain error "of such a nature as to have been clearly capable of producing an unjust result." R. 2:10-2.

## V.

We turn next to defendant's contention the trial court erred by conducting an inadequate voir dire after some jurors were alleged to have commented on testimony outside the courtroom. On the ninth day of trial, a prosecutor's office employee claimed to have overheard juror number nine say "[defendant] has bigger problems than his hair"[6] to jurors number three and eight after the court had adjourned for the day. The court took testimony about the incident from the employee and watched the security camera footage allegedly showing a portion of the encounter. The court then explained to counsel that it would bring in juror

---

[6] During testimony that day, a witness described messages he received from defendant, including defendant's own references to insecurity about his hair.

A-0600-21

number nine "to ask her whether or not she's formed an opinion about the guilt or innocence of the defendant."

The court asked juror number nine, "[o]n Thursday afternoon, July 1st, when you were leaving the courthouse at the end of the day, did you make any comments to any of the other jurors about any of the testimony that you heard during the trial?" She replied "[n]o." When asked if she was sure of her answer, she responded "I'm pretty sure." However, she recalled a comment she made to another juror about a different juror's impatience. The State argued the trial court's voir dire was insufficient because of the possibility juror number nine did not perceive that a statement about defendant's problems was a "comment on the testimony." Defendant took no position. The trial court stated,

> if I have all three jurors, including the allegedly offending juror saying that nothing was discussed, denying it, well then how do I make a determination here? Do I excuse all three based upon what someone may have overheard and may have seen? I don't know if I'm going to do that.

The trial court next called juror number eight into the courtroom. When asked whether any juror commented on testimony on July 1, juror number eight said "[n]o, Your Honor." The court asked juror number three the same question and he gave the same answer: "[n]o." After juror number three was excused from the courtroom, the State renewed its argument that the court's questioning

16

was insufficient. The court declined to take any further action, noting that while it did not question the credibility of the employee who reported the incident, a review of the surveillance video revealed minor inconsistencies in her recollection. The court explained:

> [F]or me to probe [j]uror [n]umber [nine] deeper is to take the risk of triggering exactly what we're trying to avoid, subjecting [j]uror [n]umber [nine] to an interrogation as to what she may have said or not said, and actually asking her specifically did you make a comment to the effect of the defendant in this case has bigger problems than his hair, when we don't know exactly what was said.

On appeal, defendant contends the voir dire of the jurors falls short of the "specific" and "searching" inquiry that is required under State v. R.D., 169 N.J. 551, 560 (2001). We disagree. In R.D., our Supreme Court addressed when and how a trial court must conduct "voir dire of a juror allegedly in possession of extraneous information mid-trial." Ibid. The Court explained a trial judge

> should inquire into the specific nature of the extraneous information, and whether the juror intentionally or inadvertently has imparted any of that information to other jurors. Depending on the juror's answers to searching questions by the court, the court must then determine whether it is necessary to voir dire individually other jurors to ensure the impartiality of the jury.
>
> [Ibid.]

Our Supreme Court cautioned "[i]n some instances . . . it would be more harmful to voir dire the remaining jurors because, in asking questions, inappropriate information could be imparted." Id. at 561. The Court added that to "facilitate appellate review under the abuse of discretion standard," the trial court should explain its determination on the record. Id. at 560-61.

Here, the trial court individually questioned the jurors involved and explained why it did not conduct the additional voir dire requested by the State. The court concluded more direct questioning on whether juror number nine commented on defendant's concern about his hair would "risk [] triggering exactly what we're trying to avoid." We are satisfied the trial court adequately explained why it carefully limited the questions it posed to the jurors. In these circumstances, we do not believe the trial court abused its discretion, especially considering that defense counsel did not request additional voir dire of any of the jurors and did not move to excuse them from the panel.

VI.

Defendant next argues the trial court erred in denying his motion for a judgment of acquittal on the stalking charge. After the State rested its case, but before Vo's testimony and Simring's rebuttal testimony, defendant moved for acquittal, arguing the State "failed to make out a prima facie case for each of the

18

charges brought." Regarding the stalking count, counsel argued defendant could not be convicted merely for following and messaging another person on social media, as he was "quasi invited" to view the victim's social media by her acceptance of his "friend request." Defendant also asserted the victim was unaware of his physical stalking attempts. Therefore, defendant argued, the State failed to prove the victim was reasonably "fearful because none of the conversations . . . ever talked about harm, hurt, ill wishes, or anything."

Looking at the "totality of the evidence," the trial court determined there was sufficient evidence to support the stalking charge. It found defendant's messages "demonstrate[d] an alarming disturbing infatuation at the very least with [the victim] . . . that goes beyond simply expressing a romantic interest, or expressing disappointment in being rejected."

Our review of a trial court's decision on a motion for acquittal is de novo. State v. Williams, 218 N.J. 576, 593-94 (2014). "We must determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Id. at 594 (citing State v. Reyes, 50 N.J. 454, 458-59 (1967)).

19

Our own review of the record confirms the State presented evidence that defendant was obsessed with the victim; co-workers knew about this obsession and discussed it with defendant; defendant attempted to contact the victim through third parties; and defendant visited the victim's neighborhood twice in the late hours of the night or early hours of the morning. Giving the State the benefit of favorable inferences, this evidence was more than sufficient to prove defendant engaged in a course of conduct that would concern a reasonable person.

Nor are we persuaded by defendant's contention "a 'reasonable person' would not fear what they do not know exists."[7] In H.E.S. v. J.C.S., we ruled that "in order to determine that a defendant is guilty of stalking, it is irrelevant whether the target is aware of the conduct as it occurs or whether it is discovered after the fact." 349 N.J. Super. 332, 351 (App. Div. 2002), aff'd in part, rev'd in

---

[7] The stalking statute, N.J.S.A. 2C:12-10(b), provides:

> A person is guilty of stalking, a crime of the fourth degree, if he purposefully or knowingly engages in a course of conduct directed at a specific person that would cause a reasonable person to fear for his safety or the safety of a third person or suffer other emotional distress.
>
> [(Emphasis added).]

A-0600-21

part on other grounds, 175 N.J. 309 (2003)).  The Supreme Court affirmed, holding "[t]he relevant inquiry . . .  is whether a reasonable person in [the victim's] situation, knowing what [she] knew about [the defendant] under the totality of the circumstances, would have feared bodily injury as a result of his alleged speech and conduct."  Id. at 330.  We are satisfied the evidence the State presented before defendant's motion for acquittal meets that test.

## VII.

Finally, we address defendant's sentencing contentions.  Defendant argues, "[t]here is no doubt that this was a serious case, but defendant was entitled to be sentenced in accordance with the law, not be given a mechanistically-applied aggregate sentence full of consecutive, maximum terms and which functionally ignores the existence of two compelling mitigating factors."

The scope of our review is limited.  State v. Bolvito, 217 N.J. 221, 228 (2014).  "[A]ppellate courts should not 'substitute their judgment for those of our sentencing courts. . . .'"  State v. Cuff, 239 N.J. 321, 347 (2019) (quoting State v. Case, 220 N.J. 49, 65 (2014)).  It is well-settled that "[o]nly when the facts and law show 'such a clear error of judgment that it shocks the judicial conscience' should a sentence be modified on appeal."  State v. Roach, 146 N.J. 208, 230 (1996) (quoting State v. Roth, 95 N.J. 334, 363-64 (1984)).

21

When addressing a claim that the trial court abused its discretion in weighing the relevant sentencing factors, we "assess the aggravating and mitigating factors to determine whether they 'were based upon competent credible evidence in the record.'" State v. Bieniek, 200 N.J. 601, 608 (2010) (quoting Roth, 95 N.J. at 364-65). "An appellate court is not to substitute its assessment of aggravating and mitigating factors for that of the trial court." Ibid. (citing State v. O'Donnell, 117 N.J. 210, 215 (1989)). Furthermore, "[o]ur decisions do not require . . . that the trial court explicitly reject each and every mitigating factor argued by a defendant." Id. at 609 (citing State v. Pillot, 115 N.J. 558, 565-66 (1989)).

Here, the trial court found four aggravating factors and two mitigating factors applied. The court found aggravating factors one, N.J.S.A. 2C:44-1(a)(1) (the nature and circumstances of the crime); two, N.J.S.A. 2C:44-1(a)(2) (the gravity and seriousness of the crime); three, N.J.S.A. 2C:44-1(a)(3) (the risk of re-offense); and nine, N.J.S.A. 2C:44-1(a)(9) (the need for deterrence). The court highlighted defendant's admission that he stalked other women in the past, and a statement defendant made in a recorded jail call, in which he intimated it would have been "better" if the victim was dead.

A-0600-21

The court then discussed the mitigating factors proffered by defendant, but gave weight to only two of them, factor seven, N.J.S.A. 2C:44-1(b)(7) (the defendant has no history of prior delinquency or criminal activity) and factor fourteen, N.J.S.A. 2C:44-1(b)(14) (the defendant was under twenty-six years of age at the time of the commission of the offense).[8] The court afforded "some weight to mitigating factor seven" because defendant had no criminal history. The court placed "minimal" weight on the fact that defendant was under twenty-six years old, explaining:

> As this [c]ourt has already stated and outlined, the facts and circumstances of this case involve a [twenty-two]-year[]-old man, a high school graduate and a college student, gainfully employed who carefully stalked the victim using different methods, planned his ambush of the victim, and then took steps to dispose of his weapon and hinder his apprehension.
>
> His conduct was planned, calculated, and deliberate. These were truly premeditated and malevolent acts that cannot be attributed to youth. This [c]ourt gives minimal weight to [mitigating] factor [fourteen].

---

[8] We note the original and corrected judgments of conviction fail to memorialize the court found these mitigating factors. We glean the relevant information from the sentencing hearing transcript. See Bieniek, 200 N.J. at 607 (noting the appellate panel reviewed the trial court's decision based on the "sentencing transcript"). On remand, the court should revise the judgment of conviction accordingly.

The trial court afforded no weight to mitigating factors two, N.J.S.A. 2C:44-1(b)(2) (the defendant did not contemplate his conduct would cause serious harm); four, N.J.S.A. 2C:44-1(b)(4) (substantial grounds excusing or justifying the defendant's conduct); eight, N.J.S.A. 2C:44-1(b)(8) (the defendant's conduct was the result of circumstances unlikely to recur); and nine, N.J.S.A. 2C:44-1(b)(9) (the defendant's character and attitude indicate he is unlikely to commit another offense). The court explained defendant's depression did not mitigate his conduct, noting "he knew exactly what he was doing" and that the court had already determined defendant posed "an extremely high risk" of re-offense.

The court concluded the aggravating factors "substantially and overwhelmingly outweigh[ed] the qualitative weight of mitigating factors seven and [fourteen]." We see no abuse of discretion in the trial court's findings concerning the statutory aggravating and mitigating factors.

Defendant further argues the case must be remanded because the trial court did not make a separate statement explaining why the overall length of the sentence imposed is warranted, pursuant to Torres, 246 N.J. at 270. The State concedes Torres requires the trial court to provide an explicit statement supporting the need for defendant's overall sentence. Accordingly, we remand

24

for the limited purpose of having the trial court consider the fairness of the overall length of defendant's prison sentence. On remand, the court shall also amend the judgment of conviction to reflect the aggravating and mitigating factors found by the sentencing judge. See supra note 10.

Affirmed in part and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0600-21